**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **BONNIE L. WISDOM,** | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION NO. 4:12-cv-815** |
| **V.** | § | |
| | § | |
| **GLOBAL INFLIGHT SERVICES, INC.,** | § | |
| **ATLAS AIR, INC., AND ATLAS AIR** | § | **JURY TRIAL DEMANDED** |
| **WORLDWIDE HOLDINGS, INC.,** | § | |
| **Defendants.** | § | |
| | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Bonnie L. Wisdom (hereinafter referred to as "Wisdom" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this her Original Complaint, complaining of Global Inflight Services, Inc., Atlas Air, Inc.,  and Atlas Air Worldwide Holdings, Inc. (hereinafter referred to as "Defendants" or "Defendant"), and for cause of action would show as follows:

### INTRODUCTION

1.      This action seeks legal relief, nominal, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq* and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. and certain state torts suffered by Plaintiff in the course of her employment or after her employment with the Defendants.  Plaintiff complains that she was terminated and discriminated against regarding the terms and conditions of her employment because she engaged in union organizing activities and

was retaliated against and wrongfully discharged in violation of section 510 of the ERISA, codified at 29 U.S.C. § 1140.  The stated reasons for Plaintiff's termination were a pretext. Further, Plaintiff was defamed and a victim of tortious interference in violation of the laws of the State of Texas.

## PARTIES

2.      Plaintiff Bonnie L. Wisdom is a female citizen of the United States, who is a resident of Humble, Harris County, Texas.

3.      Defendant Global Inflight Services Inc. (hereinafter referred to as "Global") is a Florida Corporation doing business in the State of Texas.  Service of the Summons and this Complaint may be made by serving its registered agent, Thomas Baker, 1649 West 23rd St., Ste. 120, Dallas, Texas 75261.

4.      Defendant Atlas Air, Inc. is a Delaware Corporation doing business in the State of Texas.  Service of the Summons and this Complaint may be made by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

5.      Defendant Atlas Air Worldwide Holdings, Inc. is a Delaware Corporation doing business in the State of Texas.  Service of the Summons and this Complaint may be made by serving its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.      Atlas Air Worldwide Holdings, Inc. is the parent company of Atlas Air, Inc. (these entities will be referred to collectively in this Complaint as "Atlas").

7.      Whenever in this Complaint it is alleged that a Defendant or Defendants committed any act or omission, it is meant that the defendant's or defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the

2

time such act or omission was committed, it was done with the full authorization, ratification or approval of defendant or was done in the routine normal course and scope of employment of the defendant's officers, directors, vice-principals, agents, servants, or employees unless otherwise stated in this Complaint.

8.      It is further alleged that both Global and Atlas were acting in concert and conducted themselves as a joint enterprise.

## JURISDICTION

9.      This action is brought pursuant to the RLA, 45 U.S.C. § 151 *et seq*., and ERISA, 29 U.S.C. § 1000 *et seq*.

10.      The court has jurisdiction over the lawsuit because the action arises under federal statutes.

11.      The court also has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

12.      The court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims because Plaintiff's claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

13.      The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division, as it was the main location of Plaintiff's employment at the time herein.

14.      This Court has jurisdiction over all claims in this action.

15.      The amount in controversy is within the jurisdictional limits of this Court.

## FACTS

16.     Plaintiff is a female citizen of the United States.

17.     At all times, Plaintiff was qualified for each of the positions that she held for Defendants or that she applied for with the Defendants.

18.     Further, Plaintiff was qualified for the positions she applied for since leaving the Defendants employ.

19.     Defendants are engaged in air carrier operations and are subject to the RLA, 45 U.S.C. § 151 *et seq.*

20.     In October 2009, Plaintiff applied for a position of Flight Attendant by submitting an application to the Atlas HR department in Purchase, New York.

21.     Atlas had just obtained a passenger service contract that World Air had previously held for nine years.

22.     This contract was worth millions of dollars to Atlas.

23.     In November of 2009, Plaintiff was interviewed initially by Denise Borelli of Atlas the HR department over the telephone.

24.     Later, Plaintiff was interviewed in person in Houston, Texas by the Vice President of Atlas HR Joseph Kelly and Fred Murphy, a principal of Global.

25.     Shortly thereafter, Plaintiff was selected for the first class of twenty-six (26) Flight Attendants and sent to training by Atlas in Miami, Florida and in New York City, New York.

26.     Jay Lee and Donna Hunt of Atlas conducted the training for the initial class of new Flight Attendants.

27.     During training, and later during flight layovers, there were several incidents involving other flight attendants in which the other flight attendants became highly intoxicated in public, intentionally walked out on their bar tabs, exposed themselves in a public hotel bar and hot tub, created loud public disturbances, and engaged in other acts of public lewdness.

28.     None of the violating flight attendant candidates nor flight attendants were disciplined for this misconduct.

29.     In training, some violating candidates were promoted to Asst. Purser and Purser, having been selected by David Burgett, Jay Lee, and Dona Hunt of Atlas Air.

30.     Defendants were aware of the incidents and despite this still promoted some of the offenders.

31.     Plaintiff successfully completed flight attendant training and had an official date of hire of January 20, 2010 with the Defendants.

32.     Plaintiff was assigned an email address of Bonnie.Wisdom@AtlasAir.com.

33.     Plaintiff was issued an Atlas Air identification card.

34.     Initially the new flight attendants reported to Jay Lee and David Burgett of Atlas.

35.     Atlas operated a Boeing 747 from Houston to Angola, Africa.

36.     Plaintiff worked as a flight attendant crew member on those non-stop flights along with other flight attendants.

37.     Plaintiff, during her employment with Defendants, predominately flew first class assignments on international private charter flights.

38.     At the time of her termination, Plaintiff's title was International Flight Attendant.

39.     Plaintiff became aware that some flight attendants, an sssistant purser and a purser were smuggling items into Angola for cash.

40.     Plaintiff reported this to Trekena Prevost ("Prevost"), a flight attendant manager for the Defendants.

41.     In addition, Plaintiff reported the incidents to David Burgett, James Hock, and Jeff Carlson of Atlas Air Flight Operations, Vice President of HR Atlas Air Joe Kelley  and Vice President Security Gary Wade of Atlas Air.

42.     The incidents were not investigated and/or were dismissed.

43.     One of the flight attendants that Plaintiff reported for smuggling was later promoted to Purser.

44.     In 2010 and 2011, there were several other incidents in which Atlas/Global crew members were involved in assault or creating disturbances at crew hotels on trips.

45.     None of the bad actors involved in these incidents were disciplined or terminated.

46.     Due to the smuggling activities, flight attendant safety at the Angola overnight hotel became an issue and the Defendants relocated the crews to another hotel.

47.     The smuggling continued at the new hotel and involved Angolan hotel personnel and the Defendants' heavily armed Angolan security guards.

48.     None of these involved crew members were disciplined or terminated for smuggling.

49.     During her employment with Defendants, Plaintiff applied for a promotion to Assistant Purser and/or Purser.

50.     Plaintiff was denied promotion to either position.

51.     Prevost told Plaintiff she had recommended her for the promotion, but that Plaintiff was not going to be promoted for "political reasons."

52.     In February 2011, Plaintiff applied for Base Manager. .

53.     Plaintiff was denied the promotion to Base Manager.

54.     During early 2011, Plaintiff and other flight attendants observed scheduling problems, payroll errors, the aforementioned disparate discipline, safety issues, smuggling, inconsistent enforcement of company policies and other mis-management issues.

55.     Defendants frequently referred to the habitual management issues as "growing pains," but failed to take action to deal with the many problems.

56.     Plaintiff discussed this with other flight attendants who were concerned about the same problems and were interested in forming a union or joining a larger flight attendant union to deal with these problems.

57.     In March of 2011, Plaintiff and another flight attendant, Susan Stammel Clayton ("Clayton"), began researching forming a flight attendant union because of all of the employment problems the flight attendants were experiencing under the inconsistent, inadequate and inexperienced management of the defendants at the Atlas Air base, in Houston, Texas.

58.     Shortly thereafter, Plaintiff and Clayton contacted the Association of Flight Attendants ("AFA") about forming a chapter for their work group.

59.      Beth DeProspero with the AFA registered Plaintiff and Clayton as Organizing Administrators.

60.     On April 19, 2011, Plaintiff and Clayton sent a letter to Defendants stating their intention to engage in concerted activities and to organize a union.

61.     Plaintiff and Clayton began sending dedicated private emails for mutual support and protection to other flight attendants in support of their organizing activities and to discuss the numerous management problems.

62.     Plaintiff and Clayton continued to stay in contact with AFA to help with their organizing activities.

63.     As response to the Plaintiff's and Clayton's announcement or the intent to organize a union, Defendants initiated and held numerous "town hall" type meetings during the months of May through September 2011, attended by Atlas Air Flight Operations Management, Atlas Air HR Department from Purchase, New York and Global's Management from Miami, Florida.

64.     The purpose of these meetings was to discourage flight attendant union organization.

65.     Plaintiff noted in April of 2011 that her minor daughter, Amy Wisdom, was not added to her insurance despite Plaintiff having filled out and properly submitted the appropriate paperwork to Defendants as was required in order to add Plaintiff's daughter to the insurance.

66.     In May of 2011, Plaintiff's daughter required surgery and it was declined.

67.     Plaintiff provided Defendants with proof that she had properly added her daughter to her benefits at the correct time.

68.     Defendants were insistent there was no remedy to rectify the situation.

69.     Defendant refused to add Plaintiff's daughter to the insurance until Plaintiff threatened legal action to enforce her ERISA rights.

70.     During the months of May through September 2011, Defendants sent numerous emails via Atlas Air's company email to all the flight attendants calculated to dissuade them from organizing or joining a union.

71.     One email from Rivien Murphy, President, and CEO of Global stated, "When AFA says you need their protection, they are just trying to scare you into joining their organization. You don't need to be scared, and you don't need AFA."

72.     Defendants engaged in conduct calculated to question the rights of the flight attendants to organize and to interfere with such efforts.

73.     Further, the Defendants' actions were designed to influence and coerce the flight attendants from selecting representatives of their choice for the purpose of collective bargaining with the Defendants on behalf of the flight attendants.

74.     In early September, Clayton was fired for attempting to help organize a flight attendant union on property.

75.     On September 14, 2011, Plaintiff was orally notified she was indefinitely suspended without pay.

76.     This action was pretextually based on false allegations.

77.     As a result of the suspension, Plaintiff was immediately blocked from company correspondence and crew scheduling.

78.     When Plaintiff was suspended, Plaintiff's Atlas Air identification was rescinded and access to the crew base restricted.

79.     On September 20, 2011, Plaintiff was terminated for the attempting to organize the flight attendant union and in retaliation for enforcing her ERISA rights.

80.     The reasons stated by Defendants that Plaintiff was given for her termination were pretextual.

## VIOLATIONS OF THE RAILWAY LABOR ACT

81.     Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

82.     By terminating Plaintiff, Defendants violated The Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*.

83.     Plaintiff was within the RLA's protected class and she was engaged in protected activity; i.e., she was engaged in efforts to organize and bargain collectively and to bring in representatives of the employee group's own choosing at the time the adverse actions were taken by the Defendants.

84.     The RLA specifically states:

> **Third. ---Designation of representatives.---** Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.  Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152

85.     The RLA further states:

> **Fourth. ---Organization and collective bargaining; freedom from interference by carrier; assistance in organizing or maintaining organization by carrier forbidden; deduction of dues from wages forbidden. ---**Employees shall have the right to organize and bargain collectively through representatives of their own choosing.  The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.  No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing

any work therefore, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: Provided, That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization.

45 U.S.C. § 152.

86.     Defendants violated both of these provisions as well as other provisions of the RLA.

87.     Plaintiff was qualified for the positions she held for the Defendant, and specifically for the position she held at the time of her termination.

88.     Plaintiff was also qualified to assume other positions at the time of her termination.

89.     There was no legitimate non-prohibited reason for Plaintiff's termination.

90.     Plaintiff's termination was a violation under the RLA.

91.     Plaintiff received no warning, counseling, or reprimand of any kind before her notice of termination to give her notice of any performance problems as a flight attendant.

92.     As a result of Defendant's' actions, Plaintiff has suffered a loss of wages and benefits in the past and will suffer a loss of wages and benefits in the future.

93.     Additionally, the aforementioned discrimination and violation of the RLA was done willfully.

94.     An award of punitive damages is therefore appropriate.

## WRONGFUL INTERFERENCE WITH PLAINTIFF'S
## EMPLOYMENT BENEFIT RIGHTS

95.     Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

96.     Pursuant to Plaintiff's employment with Defendant, Plaintiff was eligible to participate in Defendant's employment benefit plans.

97.     Plaintiff asserted her ERISA rights to have her minor daughter's surgery covered after Defendants left her daughter out of the plan despite Plaintiff properly completing the documents to enroll her daughter in the plan.

98.     The employment benefit plan offered by Defendants to its employees is governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1140, *et seq.*

99.     In terminating Plaintiff's employment, Defendant interfered with her employment benefit plan and retaliated againt Plaintiff, in violation of Section 510 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, *et seq.*

100.    Plaintiff has been damaged as a result of Defendant's conduct and sues for all appropriate relief afforded by ERISA.

## DEFAMATION

101.    Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

102.    The defamatory statements involved a private matter.

103.    On May 27, 2011, Defendants published a statement via Atlas Air email to all flight attendants; cc Atlas Air and Global Management referring to the Plaintiff as a "Disaffected Flight Attendant."

104.     Defendants intentionally and maliciously attempted to damage Plaintiff's reputation within her workgroup.

105.     On September 14, 2011, Rivien Murphy, Global's President and CEO, made an oral statement referring to Plaintiff as a "Tattletale."

106.     Defendants encouraged flight attendants to verbally defame Plaintiff by referring to Plaintiff as a "drunken idiot."

107.     On information and belief, Defendants made other false statements about Plaintiff both before and after she was terminated calculated to blackball her or make it difficult for her to find reemployment.

108.     The statements made by Defendants were false.

109.     Defendants are strictly liable to Plaintiff for the defamation.

110.     Defendants' false statement caused injury to Plaintiff, which resulted in her damages.

111.     Plaintiff seeks nominal and actual damages as provided by Texas law.

112.     Plaintiff seeks exemplary damages.

113.     Plaintiff's injury resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

**TORTIOUS INTERFERENCE**

114.     Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

115.     Plaintiff attempted to enter into economic relationships with other employers.

116.     Defendants or their agents tortiously interfered with that potential economic advantage by making false statements about the Plaintiff to the third parties Plaintiff was attempting to enter into business relationships with.

117.     Defendants' or their agents' conduct was a direct and proximate cause of Plaintiff's economic loss and damages.

118.     Defendants' or their agents' conduct was willful and with legal malice.

119.     Plaintiff has suffered actual damages and also seeks exemplary damages as permitted by Texas law.

## ATTORNEY'S FEES

120.     Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

121.     Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to the RLA, 45 U.S.C. § 151 *et seq.*, and ERISA, 29 U.S.C. § 1140, *et seq.*

## DAMAGES

122.     Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

123.     As a result of Defendants' violations of the RLA and ERISA Plaintiff seeks the following relief: (1) back pay; (2) reinstatement, or if reinstatement is deemed not feasible, front pay; (3) loss of wages and benefits in the past and the future; (4) costs of court, expert fees and attorneys' fees; (5) mental anguish and emotional distress in the past and future and (6) pre-judgment and post-judgment interest as allowed by each statute.

124.     Additionally, since Defendants' actions were committed with reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive and or

exemplary damages in an amount sufficient to deter Defendants and others similarly situated from this conduct in the future.

125.    On the state torts claims, Plaintiff seeks damages as permitted under the laws of the State of Texas to include nominal and actual damages, punitive damages and any equitable relief that is available.

## JURY DEMAND

126.    Plaintiff requests a trial by jury on issues triable by a jury in this case.

## PRAYER

WHEREFORE, Plaintiff Bonnie L. Wisdom respectfully prays upon final trial hereof, this Court grant her: appropriate backpay and front pay, including, but not limited to, her salary and lost pension, insurance and other benefits past and future; compensatory and punitive damages as allowed by law; mental anguish damages; reasonable attorney's fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; prejudgment and post-judgment interest as allowed by law; taxable court costs; nominal, actual and exemplary damages as allowed by federal and state law and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

/s/ Howard T. Dulmage

By: _____

Howard T. Dulmage
Attorney-in-Charge
SBOT No. 24029526
Federal I.D. No. 28826
Law Offices of Howard T. Dulmage, PLLC
2323 Clear Lake City Blvd., Suite 180 MB186
Houston, Texas 77062
Tel:    281 271-8540
Fax:    832 295-5797

ATTORNEY FOR PLAINTIFF
BONNIE L. WISDOM

OF COUNSEL:
Joseph Y. Ahmad
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
Texas Bar No. 00941100
SD TX I.D. No. 11602
3460 Houston Center
1221 McKinney Street
Houston, Texas  77010
Telephone:     (713) 655-1101
Telecopier:     (713) 655-0062